PATROSSO, J.
Defendant, a wholesale dealer or jobber of paint brushes, on September 26, 1952, placed an order with plaintiff’s assignor, a manufacturer of paint brushes, with its *849 place of business in Brooklyn, New York, for 200 “assortments” of brushes, in accordance with samples previously submitted by plaintiff to defendant, the brushes to bear defendant’s label. An “assortment” is a box containing six dozen brushes of three different widths. The order was shipped in three installments: the first, for 57 assortments, being received by defendant November 14; the second, for 95 assortments, received November 21; and the third, for 73 assortments plus three odd lots, was received December 12. As the goods were received by defendant, they were placed upon its shelves, but no examination was made of the boxes to determine whether they conformed to sample, and in ordinary course some were shipped out on orders received from its customers. However, on or about December 17, after some customers to whom the brushes had been shipped had returned the same as unsatisfactory, the defendant first discovered, as it claims, that the brushes did not conform to sample. Thereupon, defendant addressed a communication to plaintiff, advising it of the fact that the brushes did not conform to sample. What further correspondence occurred between the parties does not appear, but in January, 1953, defendant shipped the goods back to plaintiff, which refused to accept the same, as a result of which they were returned to Los Angeles, and defendant advised plaintiff that it was not accepting the same but that they were being held subject to plaintiff’s order.
Defendant refused to pay for the brushes returned, and plaintiff thereupon instituted this action, and in defense thereof defendant pleaded their nonconformity to the samples, and accord and satisfaction. From an adverse judgment, defendant appeals.
The evidence as to whether the brushes conform to samples was conflicting in this: defendant produced two brushes as being the samples submitted, and introduced testimony to the effect that the brushes received did not conform to such samples in various particulars. While plaintiff did not undertake to contradict this testimony, it adduced proof to the effect that the alleged samples produced by defendant were not the ones submitted by plaintiff. In view of this, we would be constrained to accept the trial court’s implied finding adverse to the defendant upon this issue were it not for the errors in rulings upon evidence now to be mentioned.
Defendant’s president in the course of his testimony, wherein he pointed out the various differences between the al *850 leged samples and the brushes delivered, made mention of the difference in their appearance, stating that this was a matter of considerable importance because the brushes were of a type that was not used or purchased by professional painters but by laymen and principally housewives who were influenced in purchasing the same by the appearance of the brush. This testimony was stricken out by the trial judge upon the ground that it was hearsay for the asserted reason that, inasmuch as the defendant was a wholesaler and the witness (its president) did not personally sell to the ultimate consumer, he could not have any personal knowledge of the fact. The witness, however, had testified that he had been connected with the defendant for some seven years and had purchased some three or four million dollars of paint brushes; that through his sales force and surveys he was kept informed and was familiar with the demands of purchasers of the various types of paint brushes. In these circumstances, he was certainly competent to testify with respect to trade demands, and it was not necessary, as the trial judge assumed, that he personally have sold brushes to housewives and other ultimate users. And the testimony stricken was relevant and material to the principal issue in the case, namely, whether the brushes delivered conformed to samples.
As previously noted, the main controversy upon the trial was whether the brushes produced by defendent and stated to be the samples submitted by plaintiff were in fact such. In identifying the same as such samples, the witness for defendant stated that he had kept them in a cabinet in his office. Upon cross-examination, he was asked by counsel for plaintiff whether it was not a fact that after he had notified plaintiff that the brushes did not conform to samples he had stated to Mr. Glazer, plaintiff’s Los Angeles representative, that he could not locate the samples in question, and in reply denied making such a statement. Counsel for plaintiff thereupon offered and, over objection of defendant, the trial court admitted in evidence a letter written by Mr. Glazer to the plaintiff wherein he stated that Mr. Lerner, the witness, had stated that he would prove to him (Glazer) that the brushes did not conform to samples when he located the samples. The letter was plainly hearsay as to the single fact of interest that it was offered to prove, that is, that the witness (Lerner) had made a statement indicating that he did not know where the samples could be located. We might not be inclined to regard the error *851 as prejudicial were it not for the fact that the trial judge, in announcing her decision, made it unmistakably clear that the alleged "inconsistent statement" appearing in Mr. Glazer's letter weighed heavily in her announced conclusion that the brushes produced by defendant and represented as being the samples were not in fact such.
Defendant also complains of the trial court's ruling in admitting evidence, over its objection, as to an alleged custom that where brushes are manufactured for a distributor under his label, the buyer is required to accept any "over-run," i. e., a quantity in excess of that ordered. We do not undertake to consider the question because there is no evidence in the record that defendant rejected the goods because the quantity delivered was in excess of that ordered.
Other rulings upon evidence are assigned as error, and while some of them appear questionable, they are not likely to recur upon a new trial, and those already mentioned are such as to require a reversal.
There remains for consideration the question of the defense of accord and satisfaction. Subsequent to the delivery of the brushes previously discussed and on about February 13, 1953, defendant, presumably pursuant to another order placed by it with plaintiff, the date of which however does not appear, received and accepted a shipment of a different type of brushes from plaintiff. The shipment consisted of 100 assortments and one dozen 1-inch brushes, for which plaintiff issued its invoice No. 7189, in the sum of $1052.80, and in payment of which defendant issued to plaintiff its check in the sum of $868.60, which plaintiff received and cashed. This check bore the following notation: "Capital Brush Co. tenders you the attached check in full payment of invoices enumerated below:
"#7189 1052.80
less: 2 doz 1" not ordered- 2.80 1050.00
less: Frt Oo chges on mdse retd to you, refused & now at our premises awaiting your disposition 181.40 868.60."
It is contended by defendant that upon these facts the trial court was compelled to conclude, as a matter of law, that this constituted an accord and satisfaction iiot only as to the charges on invoice No. 7189 but of all demands of the *852 plaintiff by virtue of the delivery of the brushes which defendant had refused to accept and which had been reshipped to plaintiff as stated in earlier portions of this opinion. With this contention, we do not agree. The notation upon the check does not purport to state that it is tendered in payment of any demands of the plaintiff except the charges on invoice No. 7189, which were entirely separate and distinct from those arising from the three previous shipments of brushes. It is true that one of the deductions noted upon the check was for the freight charges incurred by defendant in connection with its attempt to return the previous shipment of brushes to the plaintiff, but this is not tantamount to an unequivocal statement that the cheek was tendered in payment of any demand which plaintiff might have or assert against defendant for the purchase price of the brushes so sought to be returned. Under the circumstances, a question of fact was presented as to whether the tender and acceptance of the check was intended by defendant and understood by plaintiff as a satisfaction of demands of the plaintiff other than those reflected in the invoice specified. (Potter v. Pacific Coast Lbr. Co. (1951), 37 Cal.2d 592, 600-602 [234 P.2d 16].) However, the amount of the check was not only unequivocally tendered in full payment of invoice No. 7189, but so understood by plaintiff as evidenced by its letter in evidence, and by cashing the check, an accord and satisfaction resulted as to the items covered by that invoice (Potter v. Pacific Coast Lbr. Co., supra.) The trial court, however, included the sum of $181.40 so deducted in the amount of its judgment, and to this extent it is erroneous.
Nothing herein is intended to control the trial court’s determination upon the retrial of the question as to whether or not the brushes conformed to samples, or, if not, whether defendant’s conduct constituted an acceptance of the goods and thereby operated as a waiver of its right to complain of the breach of warranty.
The judgment is reversed.
Bishop, Acting P. J., concurred.
Respondent’s petition for rehearing was denied February 21, 1955.